United States District Court
Southern District of Texas
**ENTERED**
March 02, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| BROWN MEDICAL CENTER, INC., | § | |
|     Debtor. | § | **CIVIL ACTION NO. 16-0084** |
| | § | |
| ------------------------------------------------ | § | |
| | § | |
| ELIZABETH M. GUFFY, Plan Agent, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Bankruptcy Adversary No. 15-3229 |
| | § | |
| MARSHALL DAVIS BROWN, JR., | § | |
| *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

Elizabeth Guffy, the Plan Agent under the confirmed Chapter 11 Plan of Liquidation in the Brown Medical Center, Inc. bankruptcy, filed this adversary proceeding seeking to avoid certain attorneys fee and other payments as fraudulent transfers. The case is now before the Court on the Motions to Dismiss filed by Defendants Robert S. Hoffman, the Law Offices of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, and Jedediah D. Moffett, P.C. (collectively, "Hoffman/Moffett") [Doc. # 17], Marshall Davis Brown, Jr., Pavlas, Brown & York, LLP, and Pavlas & Brown, LLP (collectively, "MDBrown") [Doc. # 18], Claudia Canales, P.C. and

Claudia Canales (collectively, "Canales") [Doc. # 19], and Joseph Indelicato, Jr. and the Law Offices of Joseph Indelicato, Jr., P.C. (collectively, "Indelicato") [Doc. # 20]. Plaintiff filed Responses [Docs. # 21 (Hoffman/Moffett), # 24 (MDBrown), # 22 (Canales), and # 23 (Indelicato)]. Replies were filed by Hoffman/Moffett [Doc. # 27], MDBrown [Doc. # 28], Canales [Doc. # 30], and Indelicato [Doc. # 25]. Plaintiff filed a Sur-Reply [Doc. # 29] in opposition to Indelicato's Motion to Dismiss.

The Court has reviewed the record and the applicable legal authorities. Based on this review, the Court concludes that Plaintiff has adequately alleged her constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B) and under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), but has failed to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure as to the actual fraudulent transfer claims. Canales and Indelicato enjoy immunity as to the transfers to them as payment of their fees pursuant to orders of the state court. Therefore, the Hoffman/Moffett and MDBrown Motions to Dismiss are **granted** as to the actual fraud claims and **denied** as to the constructive fraud claims. The Canales and Indelicato Motions to Dismiss are **granted** as to all claims.

**I.     BACKGROUND**

Michael Brown, the owner of 100% of the shares of Debtor Brown Medical Center, Inc. ("BMC"), and his former wife Rachel Brown, were involved in

contentious divorce proceedings beginning in 2010. Rachel Brown was represented by attorneys Hoffman/Moffett and MDBrown. Canales was appointed by the state court as an Amicus Attorney to represent the interests of the Browns' minor children. Indelicato was appointed by the state court as the Master in Chancery with authority over certain issues in the divorce proceedings, including discovery disputes and the award of attorneys' fees.

Plaintiff alleges that BMC transferred funds to Defendants after BMC became insolvent. Plaintiff alleges also that BMC had no independent legal obligation to make the transfers, which were for Brown's sole benefit.[1]

In January 2013, Brown filed a voluntary Chapter 11 bankruptcy petition. On October 15, 2013, Brown's Chapter 11 Trustee filed a voluntary Chapter 11 bankruptcy petition on behalf of BMC. The Bankruptcy Court appointed Plaintiff Elizabeth Guffy as the Chapter 11 Trustee for BMC. On October 1, 2014, the Bankruptcy Court confirmed a plan of liquidation in BMC's bankruptcy case and appointed Guffy as the Plan Agent.

Plaintiff filed this Adversary Proceeding against Defendants, asserting fraudulent transfer claims under 11 U.S.C. § 548 and under TUFTA. *See* First

---

[1] Although not specifically alleged in the First Amended Complaint, it appears that the state court in the divorce proceeding ordered Brown to pay Rachel Brown's legal fees.

Amended Complaint [Doc. # 16]. Plaintiff alleges both actual fraud and constructive fraud as to the transfers to each Defendant.

By Memorandum and Order [Doc. # 15] entered February 3, 2016, this Court withdrew the reference of this Adversary Proceeding and retained the case on its own docket. Defendants filed their Motions to Dismiss, which have been fully briefed and are ripe for decision.

## II.     LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements

do not establish facial plausibility." *Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014). Facial plausibility exists when there are sufficient factual allegations in the complaint to permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The parties agree that the heightened pleading requirements of Rule 9 apply to the claims of actual fraud under 11 U.S.C. § 548(a)(1)(A) and under TUFTA § 24.005(a)(1). Rule 9 of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b); *see Leatherman v. Tarrant Cty. Narcotics Intelligence Unit*, 507 U.S. 163, 168-69 (1993); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). Rule 9(b) requires a plaintiff to allege the existence of facts sufficient to warrant the pleaded conclusion that fraud has occurred. *See In Re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994).

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*; *see also Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374

(5th Cir. 2003). Federal courts are also permitted to refer to matters of public record when deciding a motion to dismiss under Rule 12(b)(6). *See Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (citing *Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir.1994)). Additionally, the Court may consider matters of which judicial notice may be taken. *U.S. ex. rel. Willard v. Humana Helath Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)). State court orders are matters of which this Court may take judicial notice. *See* FED. R. EVID. 201(b)(2); *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 685 (S.D. Tex. 2014) (Lake, J.).

### III.  ANALYSIS

Plaintiff in this case asserts constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B) and under TUFTA § 25.005(a)(2) and § 25.006(a). Plaintiff also asserts claims of actual fraudulent transfers under § 528(a)(1)(A) and under TUFTA § 25.005(a)(1).

#### A.  **Constructive Fraudulent Transfer Claims**

Under § 528(a)(1)(B), a bankruptcy trustee may avoid a transfer that was made within two years before the date the bankruptcy petition was filed if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" and either "was insolvent on the date that such transfer was made or such

obligation was incurred, or became insolvent as a result of such transfer or obligation; was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." 11 U.S.C. § 548(a)(1)(B); *In re Inspirations Imports, Inc.*, 2014 WL 1410243, *2 (N.D. Tex. Apr. 3, 2014) (citing *In re GWI PCS 1 Inc*., 230 F.3d 788, 805 (5th Cir. 2000)).

In support of the § 548(a)(1)(B) claim, Plaintiff alleges that BMC transferred property to Defendants within two years before the petition was filed on October 15, 2013. Indeed, Plaintiff specifically identifies certain such transfers. *See* First Amended Complaint, ¶¶ 30-32. Plaintiff alleges that BMC received less than reasonably equivalent value in exchange for the transfer because the transfers were made at the direction of and apparently for the benefit of Brown personally with no benefit to BMC. *See id.*, ¶ 40. Defendants argue that BMC may have received some benefit from the payments it made on behalf of Brown, who owned 100% of BMC's stock. For purposes of the Motions to Dismiss, however, the facts pleaded in the First

Amended Complaint must be taken as true. *See Harrington*, 563 F.3d at 147. Plaintiff alleges that, when the transfers were made, BMC was either insolvent or became insolvent as a result of the transfers. *See id.*, ¶¶ 28-29, 40. Defendants challenge whether BMC was actually insolvent or became insolvent as a result of the transfers but, again, the facts in the First Amended Complaint are presumed to be true for purposes of the Motions to Dismiss. The allegations in the First Amended Complaint adequately state a fraudulent transfer claim under § 548(a)(1)(B).

Plaintiff asserts a TUFTA claim of constructive fraudulent transfers under § 24.005(a)(2) and § 24.006(a). Under § 24.005(a)(2), a transfer made by a debtor is fraudulent if made "without receiving a reasonably equivalent value in exchange for the transfer" and the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." TEX. BUS. & COMM. CODE § 24.005(a)(2). Additionally, a transfer made by a debtor is fraudulent if made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." TEX. BUS. & COMM. CODE § 24.006(a). The Plan Agent, on behalf of

BMC's creditors, is authorized to avoid transfers that are fraudulent under § 24.005 and/or 24.006. TEX. BUS. & COMM. CODE § 24.008(a)(1).

Plaintiff seeks to avoid transfers made to Defendants by BMC within four years before the bankruptcy petition was filed on October 15, 2013. Plaintiff alleges that BMC transferred property to Defendants within four years before the petition was filed and, indeed, specifically identifies certain transfers during the four-year period. *See* First Amended Complaint, ¶ 30-32. Plaintiff alleges that BMC received less than reasonably equivalent value in exchange for the transfer because the transfers were made at the direction of and apparently for the benefit of Brown personally with no benefit to BMC. *See id.*, ¶¶ 45, 46. Plaintiff alleges that, when the transfers were made, BMC either was engaged in business for which its remaining assets were unreasonably small in relation to that business, or reasonably should have known that it was incurring debts beyond its ability to pay as they became due. *See id.*, ¶ 46. Plaintiff alleges also that, when the transfers were made, BMC was either insolvent or became insolvent as a result of the transfers. *See id.*, ¶¶ 28-29, 45. Plaintiff alleges that a creditor exists for whom the Plan Agent can act, *see id.*, ¶¶ 45, 46, and she identifies the United States as such a creditor, *see id.*, ¶ 26. The allegations in Plaintiff's First Amended Complaint adequately state a constructive fraudulent transfer claim under TUFTA § 24.005(a)(2) and § 24.006(a). The Motions to Dismiss

the claims under § 548(a)(1)(B) and TUFTA § 24.005(a)(2) and § 24.006(a) are denied.

### B. Actual Fraudulent Transfer Claims

Plaintiff seeks, pursuant to § 548(a)(1)(A) and TUFTA § 24.005(a)(1), to recover transfers allegedly made by BMC with actual intent to defraud. A trustee is authorized to recover transfers made within two years of the filing of a bankruptcy petition if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A); *Williams v. Houston Plants & Garden World, Inc.*, 508 B.R. 11, 18 (S.D. Tex. 2014) (Rosenthal, J.). To determine whether the debtor acted with actual intent to defraud, courts consider several "badges of fraud." The badges of fraud for a § 548(a)(1)(A) claim are:

(1) the lack or inadequacy of consideration;
(2) the family, friendship or close associate relationship between the parties;
(3) the retention of possession, benefit or use of the property in question;
(4) the financial condition of the party sought to be charged both before and after the transaction in question;
(5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
(6) the general chronology of events and transactions under inquiry.

*Id.* at 18-19 (citing *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008)).

In this case, there is no allegation that there was a family, friendship or close associate relationship between BMC and Defendants, or that BMC retained possession, benefit or use of the funds transferred to Defendants. Plaintiff alleges that BMC was insolvent when it made the transfers. *See* First Amended Complaint, ¶¶ 28-29, 40. Plaintiff argues that there are allegations of factor (5) – "the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors" – and factor (6) – a "general chronology of events and transactions under inquiry." *See* Response [Doc. # 21], p. 8; Response [Doc. # 24], p. 8. Plaintiff, however, supports the existence of factors (5) and (6) only by citing to the allegations that BMC was insolvent when it made the transfers at issue. *See id.* These allegations fail to satisfy the Rule 9 requirement that they be pled with particularity and do not support the existence of "badges of fraud" (5) and (6). Therefore, the only "badges of fraud" alleged with particularity in the First Amended Complaint are insolvency and inadequate consideration. These are the two factors for a constructive fraudulent transfer under § 548(a)(1)(B). Plaintiff has failed to allege a factual basis for the claim of actual fraud beyond the allegations that support the constructive fraud claim.

Absent allegations of fact that are stated with particularity, the Court grants Defendants' Motions to Dismiss the § 548(a)(1)(A) claim.

Much like § 548(a)(1)(A), under Texas state law, a transfer is actually fraudulent if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor." TUFTA § 24.005(a)(1). The statute contains a non-exclusive list of factors to be considered by the Court in determining whether the debtor acted with actual intent to defraud:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TUFTA § 24.005(b).

There are no allegations in the First Amended Complaint that the Defendants who received the transfers were BMC insiders, that BMC retained possession or

control of the funds after they were transferred, that the transfers were concealed, that BMC had been sued or threatened with suit related to the divorce proceedings in which the transfers were made, that the transfers involved substantially all of BMC's assets, that BMC absconded, that BMC removed or concealed assets, that the transfers occurred shortly before or shortly after a substantial debt was incurred, or that BMC transferred the essential assets of its business to a lienor who transferred the assets to a BMC insider. Plaintiff does allege that the value of the consideration BMC received was not reasonably equivalent to the value of the funds transferred and that BMC was insolvent or became insolvent shortly after the transfers were made. *See* First Amended Complaint, ¶ 45. These are the factors that indicate constructive fraudulent transfers under TUFTA § 24.005(a)(2) and § 24.006(a). Plaintiff has failed to allege with particularity facts indicating actual fraudulent intent rather than constructive fraud. As a result, Plaintiff has failed to state with particularity a claim under TUFTA § 24.005(a)(1), and that claim is dismissed as to all Defendants.[2]

---

[2] Plaintiff requests leave to file a Second Amended Complaint should any claims be dismissed. *See, e.g.*, Response [Doc. # 21], p. 9. At the initial conference on March 8, 2016, the Court will discuss with Plaintiff's counsel the factual basis for any proposed amendment regarding the dismissed actual fraudulent transfer claims.

### C. Canales's Immunity Defense

The state court in the Brown divorce proceeding appointed Canales under Chapter 107 of the Texas Family Code as Amicus Attorney to assist that court in protecting the interests of the Browns' minor children. *See* Order Appointing Amicus Attorney, Exh. A to Canales Motion to Dismiss. Under Texas law, an Amicus Attorney appointed under Chapter 107 "is not liable for civil damages arising from an action taken, a recommendation made, or an opinion given" in the Amicus Attorney capacity. TEX. FAM. CODE § 107.009(a). The Order Appointing Amicus Attorney ordered "each party" to deposit $5,000 with Canales's Trust Account for fees and expenses of the Amicus Attorney.[3] *See* Order Appointing Amicus Attorney. The state court later ordered "the parties" to pay Canales directly $125,000 as additional fees and expenses as Amicus Attorney. *See* Order for Additional Trial Deposit, Exh. 9 to Indelicato Motion. Clearly, receipt of payment of her fees and expenses as ordered by the state court was "an action taken" by Canales in her capacity as Amicus Attorney. Additionally, the orders issued by the state court imposed an obligation on BMC to make payments to Canales.

---

[3] BMC was a party to the Brown divorce proceedings, having been joined as a Third-Party Respondent. *See, e.g.,* Order on Petitioner's Motion to Deposit Additional Funds into Registry of the Court, Exh. 8 to Indelicato Motion.

The immunity afforded to the Amicus Attorney under § 107.009 does not apply to actions taken "(1) with conscious indifference or reckless disregard to the safety of another; (2) in bad faith or with malice; or (3) that is grossly negligent or wilfully wrongful." TEX. FAM. CODE § 107.009(b). However, there are no allegations in the First Amended Complaint that Canales acted with conscious indifference or reckless disregard to the safety of another. There are no factual allegations that suggest that Canales accepted payment of her fees and expenses in bad faith or with malice, or that her receipt of such payment was grossly negligent or wilfully wrongful.

Based on the foregoing, the record on Canales's Motion to Dismiss establishes that she is entitled to immunity under § 107.009(a), and that there are no factual allegations that would implicate any of the exceptions in § 107.009(b). As a result, Canales is immune from suit for damages for her receipt of funds transferred pursuant to court order in connection with her appointment and service as the Amicus Attorney in the Brown divorce proceeding. Her Motion to Dismiss is granted.

### D. Indelicato's Immunity Defense

The state court appointed Indelicato as Master in Chancery in the Brown divorce proceeding. *See* Order Appointing Master in Chancery, Exh. 1 to Indelicato Motion. As Master in Chancery, Indelicato had authority "to convene evidentiary hearings and to rule on all discovery matters submitted to him pursuant to order." *See*

*id.* Indelicato had authority to subpoena witnesses, to order production of documents, to administer oaths, and to award attorneys' fees. *See id.* The Master in Chancery, pursuant to the state court's order, had authority "to find any party in contempt for failure to comply with any decision and to issue sanctions regarding any finding of contempt." *Id.* at 2. Additionally, the state court ordered that Indelicato, as Master in Chancery, was specifically authorized to charge for his services. *See id.*; Supplemental Order Appointing Master in Chancery, Exh. 2 to Indelicato Motion. "When judges delegate their authority or appoint others to perform services for the court, the judge's absolute judicial immunity may extend to his or her delegate or appointee." *McPeters v. LexisNexis*, 11 F. Supp. 3d 789, 792 (S.D. Tex. 2014) (citing *Vernon v. Rollins-Threats*, 2005 WL 3742821, *4 (N.D. Tex. Nov. 2, 2005)). The court-appointed Master in Chancery is an integral part of the judicial process. Focusing on the nature of the functions to be performed, rather than "on the identity of the actor who performed it," Indelicato in his capacity as Master in Chancery is entitled to derived judicial immunity. *See, e.g., Hall v. Dixon*, 2010 WL 3909515, *40 (S.D. Tex. Sept. 30, 2010) (Rosenthal, J.) (quoting *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002)).

Plaintiff alleges in the First Amended Complaint that Indelicato approved the attorneys fee invoices submitted by Rachel Brown's attorneys without adequately

reviewing them. *See* First Amended Complaint, ¶ 23, n.1. Indelicato, as court-appointed Master in Chancery, was granted authority to award attorneys' fees. *See* Order Appointing Master in Chancery; Supplemental Order Appointing Master in Chancery. "Once an individual is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to that function – whether good or bad, honest or dishonest, well-intentioned or not – is immune from suit. Once applied to the function, the cloak of immunity covers all acts, both good and bad." *Davis v. West*, 317 S.W.3d 301, 307 (Tex. App – Houston [1st Dist.] 2009, reh'g denied) (Hanks, J.). Indelicato is protected by derived judicial immunity for his performance of this judicial function of reviewing and awarding attorneys' fees.

Plaintiff alleges in the First Amended Complaint that BMC made transfers to Indelicato. *See* First Amended Complaint, ¶ 31. The state court specifically ordered BMC, as a third-party respondent in the Brown divorce proceeding, to pay Indelicato's fees and costs "directly to Joseph Indelicato, Jr." *See, e.g.,* Order for Costs, Exh. 3 to Indelicato Motion; Order for Costs, Exh. 4 to Indelicato Motion; Order for Costs, Exh. 5 to Indelicato Motion; Order for Costs, Exh. 6 to Indelicato Motion. These state court orders imposed an obligation on BMC to make transfers to Indelicato, and BMC did so in compliance with the court orders.

Absent allegations that overcome Indelicato's derived judicial immunity for the performance of the tasks the state court ordered him to undertake, and in light of the court orders directing BMC to make transfers directly to Indelicato, the Court grants Indelicato's Motion to Dismiss.

## IV.    CONCLUSION AND ORDER

Plaintiff has adequately alleged her constructive fraudulent transfer claims under § 548(a)(1)(B) and under TUFTA § 24.005(a)(2) and § 24.006(a).  The Court advises that it will require Plaintiff to provide thorough initial disclosures by a deadline to be established at the pretrial conference on March 8, 2016.  Plaintiff has failed, however, to satisfy the heightened pleading requirements of Rule 9 as to the actual fraudulent transfer claims pursuant to § 548(a)(1)(A) and under TUFTA § 24.005(a)(1).

Canales is entitled to immunity pursuant to § 107.009 of the Texas Family Code, and Indelicato is entitled to derived judicial immunity in his role as appointed Master in Chancery in the divorce proceeding.  It is, therefore, hereby

**ORDERED** that the Hoffman/Moffett and MDBrown Motions to Dismiss [Docs. # 17 and # 18] are **DENIED** as to the constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B) and under TUFTA § 24.005(a)(2) and § 24.006(a),

and are **GRANTED** as to the actual fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(A) and under TUFTA § 24.005(a)(1).  It is further

**ORDERED** that the Canales and Indelicato Motions to Dismiss [Docs. # 19 and # 20] are **GRANTED**.

SIGNED at Houston, Texas, this **2nd** day of **March, 2016**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE